Hand-Delivered

FILED
CHARLOTTE, NC

FEB 27 2025

US DISTRICT COURT
WESTERN DISTRICT OF NC

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

BRADLEY DOUGLAS MOORE and )
SUCHITRA MOHANTY, )
　　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　) Case No. 3:25-CV-148-MOC
　　v.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
NEWREZ, LLC, and US BANK TRUST, )
N.A., as trustee for VRMTG ASSET )
TRUST, )
　　　　　　　　　　　　　　　　　　　　　)
　　　　Defendants. )

## COMPLAINT

Plaintiffs, Bradley Douglas Moore and Suchitra Mohanty, for their complaint against Defendants, allege as follows:

1. Defendants Newrez, LLC, and US Bank Trust, N.A., are a mortgage loan servicer and lender, respectively. This action arises from their wrongful actions that caused Plaintiffs to lose their home.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 12 U.S.C. § 2614, 15 U.S.C. § 1691e(f), 15 U.S.C. § 1681p and 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because this is the district in which the home Plaintiffs owned was located and where all or substantially all of the events underlying this action occurred.

## PARTIES

4. Plaintiffs Bradley Moore and Suchitra Mohanty are married and reside in Charlotte, North Carolina.

5. Defendant Newrez, LLC, is a Delaware limited liability company that is registered to do business in North Carolina, with a registered office at 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608.

6. Newrez, LLC does business in North Carolina as Shellpoint Mortgage Servicing, and is referred to herein as "Shellpoint."

7. Defendant US Bank Trust, N.A. ("US Bank Trust") is an Oregon corporation that is registered to do business in North Carolina, with a registered office at 160 Mine Lake Court, Suite 200, Raleigh, NC 27615.

## FACTS

8. Plaintiffs Bradley Moore and Suchitra Mohanty purchased the house located at 3453 Selwyn Avenue, Charlotte NC ("the Selwyn Property") in September 2019.

9. Plaintiffs made a down payment on the Selwyn Property and also took out a mortgage loan issued by American Security Mortgage Corp.

10. Plaintiffs experienced a series of health, family, and professional challenges due to the COVID-19 pandemic.

11. Plaintiffs enrolled in a mortgage payment forbearance program with their lender due to the pandemic.

12. On or about May 21, 2021, American Security Mortgage Corp., through its nominee the Mortgage Electronic Registration Systems, Inc., transferred its interest in Plaintiffs' mortgage loan and the Deed of Trust secured by the Selwyn Property to Wells Fargo Bank, N.A ("Wells Fargo").

13. In approximately the early Fall of 2022, Plaintiffs submitted an application for a loan modification to Wells Fargo that would have enabled them to make manageable payments on their mortgage loan, and would not have required them to make all the payments they had deferred under the forbearance program at once.

14. Federal and state law, and applicable loan rules, required Defendants to provide a loan modification to Plaintiffs as they emerged from the COVID forbearance program.

15. On September 30, 2022, a representative of Wells Fargo emailed Plaintiffs and informed them that their loan modification application was complete and that Wells Fargo had "everything we need to begin our review of your home assistance request."

16. Wells Fargo agreed to modify Plaintiffs' loan agreement if they made three trial payments of $3,055.74.

17. The loan modification Wells Fargo offered upon completion of the three trial payments called for monthly payments of approximately $3,000 and a loan term of forty years. (Plaintiffs requested their full loan files from Wells Fargo and Shellpoint to confirm the terms of the loan modification that was offered, but Wells Fargo and Shellpoint have not provided those files.)

18. In a letter dated November 28, 2022, Wells Fargo informed Plaintiffs that that the servicing of their mortgage was being transferred to Shellpoint on December 15, 2022.

19. The letter stated: "Please understand that if you were working with Wells Fargo on assistance options prior to the transfer, this process will continue with the new server. All approved assistance options will remain in effect once transferred, and all

3

financial documentation provided to support your assistance application will be transferred."

20. On or about November 29, 2022, Plaintiffs made their first trial payment to Wells Fargo.

21. In a letter dated December 19, 2022, Shellpoint wrote Plaintiffs that their loan had been sold to US Bank Trust, N.A., as trustee for VRMTG Asset Trust.

22. On or about January 30, 2023, Plaintiffs made their second trial payment to Shellpoint.

23. On or about February 17, 2023, Shellpoint sent Plaintiffs a monthly statement that said: "Your loan is currently on a Loan Modification Trial Period Plan. Your trial period payment is $3,055.74. The payment due on this statement reflects your Contractual payment. You must make all trial payments in the month in which they are due in order to qualify for a modification. Your next trial payment is due on 12/01/22 [sic]…"

24. On or about February 28, 2023, Plaintiffs made their third trial payment to Shellpoint of $3,055.74.

25. After Plaintiffs made all three trial payments, Shellpoint failed to deliver the promised loan modification.

26. Plaintiffs contacted Shellpoint repeatedly, many times, to ask about the loan modification.

27. Shellpoint representatives repeatedly told Plaintiffs that they had made all of their trial payments and no further payments were needed until they received their loan modification paperwork.

28. Finally, on May 31, 2023, a Shellpoint representative emailed Plaintiffs saying that if they did not make a payment of $9,159.99 the review of their loan modification application would be closed.

29. Shellpoint had no legal basis to demand a payment of $9,159.99 and Plaintiffs did not make it.

30. Shellpoint subsequently sent Plantiffs monthly statements demanding that they pay the entire amount of deferred payments under the COVID forbearance plan, amounting to over $100,000.

31. Shellpoint was prohibited from demanding that Plaintiffs pay the entire amount of their deferred payments under federal and state law following the COVID pandemic.

32. Had Shellpoint honored the loan modification agreement after Plaintiffs made their three trial payments, Plaintiffs could have made the required payments under the agreement.

33. Shellpoint's actions ultimately caused Plaintiffs to lose their home, and lose hundreds of thousands of dollars of equity that they had built up in it.

**Count I – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT**

34. The allegations in paragraphs 1 through 33 above are incorporated herein.

35. The Real Estate Settlement Procedures Act ("RESPA") requires loan servicers to evaluate completed applications for a loan modification and provide a written determination within 30 days. 12 C.F.R. § 1024.41(c).

36. Plaintiffs submitted a complete application for a loan modification to Shellpoint, including by making three required trial payments under the terms set by Plaintiffs' prior loan servicer, Wells Fargo.

37. Defendants failed to provide a timely response or process the application in good faith.

38. Defendants' failure to comply with RESPA has caused Plaintiffs financial harm, and Plaintiffs are entitled to damages pursuant to 12 U.S.C. § 2605(f).

### Count II – VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT

39. The allegations in paragraphs 1 through 38 above are incorporated herein.

40. Under the Equal Credit Opportunity Act ("ECOA"), within thirty days of receiving a completed application for credit, a creditor must notify the applicant of its action on the application. 15 U.S.C. § 1691(d)(1). If a creditor takes "adverse action" on an application for credit, it must provide the applicant with a written notice containing the specific reasons for such action. 15 U.S.C. § 1691(d)(2); 12 C.F.R. § 1002.9(a)(1).

41. Shellpoint failed to provide the written notice required by ECOA.

42. Defendants' failure to comply with ECOA has caused Plaintiffs financial harm, and Plaintiffs are entitled to damages.

### Count III – VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

43. The allegations in paragraphs 1 – 42 above are incorporated herein.

44. Defendants' actions as described above constituted unfair methods of competition and unfair and deceptive acts and practices in violation of N.C. Gen. Stat. § 75-1.1.

45. Defendants wrongfully denied Plaintiffs a loan modification after assuring them they would receive one after making three trial payments.

46. Defendants' actions as alleged were in and affecting commerce.

47. Defendants' actions proximately caused injury to the Plaintiffs by ultimately causing them to lose their home.

48. Pursuant to N.C. Gen. Stat. §§ 75-16 and 75-16.1, Plaintiffs are entitled to have any judgment for damages granted in its favor be trebled in amount and to be awarded its reasonable attorney's fees and costs incurred.

## Count IV – BREACH OF CONTRACT

49. The allegations in paragraphs 1 – 48 above are incorporated herein.

50. Defendants' oral and written representations to Plaintiffs, and their overall course of dealing, created an express or implied contract for a loan modification that would permit Plaintiffs to make manageable monthly payments, and not require them to make all payments they had deferred during the forbearance period at once.

51. Plaintiffs relied on those representations and performed their obligations under the express or implied contract by making three trial payments of $3,055 each.

52. Defendants breached the express or implied contract by demanding in their May 31, 2023 letter that Plaintiffs pay $9,159.99 immediately, and by subsequently demanding that Plaintiffs pay the entire balance of the payments they deferred under the COVID forbearance program.

53. Defendants' breach caused Plaintiffs harm in the form of their trial payments and ultimately the loss of their home.

## Count V – VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

54. The allegations in paragraphs 1 – 53 above are incorporated herein.

55. The Fair Debt Collection Practices Act ("FDCPA") prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt, and also prohibits debt collectors from using any unfair or unconscionable means to attempt to collect a debt. 15 U.S.C. §§ 1692e & 1692f

56. Shellpoint is a debt collector that regularly attempts to collect debts owed or asserted to be owed to another by servicing residential mortgage loans.

57. Shellpoint wrongly failed to respond to Plaintiffs' completed application for a loan modification, wrongly induced Plaintiffs to make trial payments in anticipation of a loan modification, and wrongly demanded that Plaintiffs pay the entire balance of their deferred payments after coming out of their COVID forbearance program.

58. Shellpoint instituted a foreclosure proceeding against the Selwyn Property in July 2023.

59. Shellpoint continued attempting to foreclose on the Selwyn Property through February 29, 2024.

60. Shellpoint's wrongful actions caused Plaintiffs financial damages.

### Count VI – VIOLATION OF FAIR CREDIT REPORTING ACT

61. The allegations in paragraphs 1-60 above are incorporated herein.

62. After Plaintiffs refused to make the payment of $9,159.99 that Shellpoint demanded on May 31, 2023, Defendants reported to consumer reporting agencies that Plaintiffs had missed payments on their mortgage loan.

63. As stated above, Defendants had no right to demand a payment of $9,159.99 on May 31, 2023, and the reports Defendants made were wrongful.

64. Plaintiffs disputed the negative reports Defendants made to the consumer reporting agencies.

65. Defendants failed to conduct a reasonable investigation and correct the inaccurate reports.

66. Plaintiffs suffered damages as a result of Defendants' inaccurate report to the consumer reporting agencies and their failure to correct those reports.

WHEREFORE, Plaintiffs seek judgment against Defendants as follows:

(a) Actual and statutory damages in an amount to be determined at trial.

(b) Treble damages and attorneys' fees pursuant to N.C. Gen. Stat. § 75-16 and 75-16.1,

(c) Such other relief as the Court deems just and proper.

Dated: February 26, 2025

*Bradley Moore*
Bradley Moore
Pro se

*Suchitra Mohanty*
Suchitra Mohanty
Pro se